UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/24/18

JAMALUDDIN ALMAHDI,

            Petitioner,

- v. -

THE ATTORNEY GENERAL OF THE STATE OF NEW YORK and C. RABSATT, SUPERINTENDENT,

            Respondents.

**ORDER**

15 Civ. 7522 (PGG) (GWG)

PAUL G. GARDEPHE, U.S.D.J.:

        On October 21, 2013, pro se Petitioner Jamaluddin Almahdi filed a habeas corpus petition pursuant to 28 U.S.C. § 2254, seeking to vacate his convictions for Conspiracy in the Fourth Degree, N.Y. Penal Law § 105.10(1), Grand Larceny in the First Degree, N.Y. Penal Law § 155.42, and Identity Theft in the First Degree, N.Y. Penal Law § 190.80(1). (Am. Pet. (Dkt. No. 12) at 2)[1] On October 2, 2015, this Court referred the petition to Magistrate Judge Gabriel W. Gorenstein for a Report and Recommendation ("R & R"). (Order of Reference (Dkt. No. 24)) On March 22, 2017, Judge Gorenstein issued an R & R recommending that this Court deny the petition. (R & R (Dkt. No. 44)) For the reasons stated below, this Court will adopt the R & R in its entirety, and Almahdi's petition will be denied.

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

## BACKGROUND

I. **FACTS**

On May 15, 2010, Almahdi drove co-conspirator Nefertiti Garnett to a Chase Bank branch in Dutchess County in order to conduct a fraudulent bank transaction. (See Indictment (Dkt. No. 31) at 31; Aff. in Resp. to Def.'s CPL § 440.10 Motion (Dkt. No. 31-1) at 46 ¶ 6) Garnett impersonated the identity of victim Karin Bombard, and withdrew money from Bombard's Chase Bank account. (Indictment (Dkt. No. 31) at 31; Aff. in Resp. to Def.'s CPL § 440.10 Motion (Dkt. No. 31-1) at 46 ¶ 6; Resp. Br. (Dkt. No. 30) at 3) Shortly after Almahdi and Garnett drove away from the bank, police stopped and arrested them. (Aff. in Resp. to Def.'s CPL § 440.10 Motion (Dkt. No. 31-1) at 46 ¶ 6; Am. Pet. (Dkt. No. 12) at 23; Resp. Br. (Dkt. No. 30) at 3)

During the arrest, Dutchess County Police opened the trunk of the car Almahdi was driving and seized a briefcase containing a computer. (Am. Pet. (Dkt. No. 12) at 23; Aff. in Resp. to Def.'s CPL § 440.10 Motion (Dkt. No. 31-1) at 46 ¶ 6) That computer was later searched pursuant to a search warrant. (See Am. Pet (Dkt. No. 12) at 24; Am. Pet., Ex. 11 (Search Warrant Application) (Dkt. No. 12) at 47-48; Search Warrant Application (Dkt. No. 31-1) at 43-44) On October 28, 2010, in the Village of Wappingers Falls Justice Court, Almahdi pled guilty to Criminal Facilitation in the Fourth Degree. (Aff. in Opp. to CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 206 ¶ 2; State Record (Dkt. No. 31-1) at 41) He was sentenced to ten months imprisonment. (Aff. in Opp. to CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 206 ¶ 2)

At the time of the Dutchess County arrest, Almahdi was on supervised release for a federal conviction. (Id. at 206 ¶ 3) After he was sentenced in Wappingers Falls, he was transferred to federal custody so that his supervised release violation could be addressed. (Id.)

In August of 2011, a New York County grand jury indicted Almahdi and five co-conspirators on numerous charges related to an identity theft scheme. (Indictment (Dkt. No. 30) at 3; Aff. in Opp. to CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 207 ¶ 4) Almahdi was charged with: (1) conspiracy in the fourth degree, in violation of N.Y. Penal Law § 105.10(1); (2) grand larceny in the first degree, in violation of N.Y. Penal Law § 155.42; (3) seventeen counts of identity theft in the first degree, in violation of N.Y. Penal Law § 190.80(1); and (4) identity theft in the second degree, in violation of N.Y. Penal Law § 190.79(1). (Indictment (Dkt. No. 31) at 3-4, 144-48, 156, 159-60, 162-67, 170, 172-73) On August 18, 2011, the New York County District Attorney's Office made Interstate Agreement on Detainers ("IAD") filings seeking Almahdi's extradition from federal custody in connection with the state court indictment. (Aff. in Opp. to CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 207 ¶¶ 4-5; Am. Pet., Ex. 9 (IAD Detainer Request) (Dkt. No. 12) at 44-45)

On or about January 6, 2012, Almahdi was sentenced to two additional years of imprisonment for violating his supervised release. (See Aff. in Opp. to CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 207 ¶ 6; Am. Pet. (Dkt. No. 12) at 18-19) On January 24, 2012, Almahdi was transferred to New York County pursuant to the IAD request. (Aff. in Opp. to CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 207 ¶ 7)

On May 29, 2012, Almahdi pled guilty to Conspiracy in the Fourth Degree, Grand Larceny in the First Degree, and Identity Theft in the First Degree in Supreme Court of the State of New York. (Plea Tr. (Dkt. No. 31) at 174-75) During his allocution, Justice Carro asked Almahdi, inter alia, whether he wanted to plead guilty, and whether "anyone [had] forced [him] . . . to take th[e] plea[.]" (Id. at 176-77) Justice Carro also apprised Almahdi of the maximum

3

sentences he was facing, as well as the constitutional rights he was relinquishing by pleading guilty. (Id. at 177-88)

In pleading guilty, Almahdi admitted that – between February 2009 and February 2011 – he had led a group that stole more than $1 million from Chase Bank. (See id. at 181-83) Almahdi admitted that he had "engaged in conduct constituting the crimes of identi[t]y theft, criminal possession of a forged instrument, criminal possession of stolen property, unlawful possession of personal identification information, computer trespass and larceny in order to enrich [himself] and others in the group [and] to avoid detection by law enforcement." (Id. at 181) Almahdi further admitted that he had driven a co-conspirator to a Chase Bank to "conduct a fraudulent bank transaction," and that he had purchased credit reports and personal identifying information of potential victims so that his co-conspirators could assume the victims' identities and steal from their bank accounts. (Id. at 181-86)

On May 30, 2012, Almahdi filed a pro se habeas corpus petition, claiming that defects in the IAD extradition process deprived him of due process of law. (CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 193-200) The petition was denied by summary order on July 13, 2012. (State Decision (Dkt. No. 31) at 212) While the petition alleged substantive violations of the IAD, the petition did not reference or make any ineffective assistance of counsel claims. (See CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 195-200) On October 1, 2013, the Appellate Division, First Department, denied Almahdi's motion for permission to appeal as "moot." (Appellate Division Order (Dkt. No. 31-1) at 12)

On June 20, 2012, Justice Carro sentenced Almahdi to one and a third to four years' imprisonment on the conspiracy charge, six to eighteen years' imprisonment on the grand larceny charge, and two and a third to seven years' imprisonment on the identity theft charge,

with all sentences to run concurrently with each other and with any other sentence Almahdi was then serving. (Sentencing Tr. (Dkt. No. 31) at 191)

On February 10, 2013, Almahdi moved to vacate his conviction under N.Y. Crim. Pro. Law § 440.10. (CPL § 440.10 Motion to Vacate (Dkt. No. 31-1) at 15-44) Almahdi argued that his "counsel failed to provide effective assistance of counsel" (id. at 17) by not (1) investigating Almahdi's case or interviewing Almahdi (id. at 17, 20-22); (2) moving to dismiss on double jeopardy grounds (id. at 24-27); (3) moving to obtain impeachment evidence regarding a potential witness, Zoe Walmsley (id. at 83-84); and (4) moving to suppress the computer recovered in the Dutchess County arrest. (See id. at 28-32) On July 24, 2013, Justice Carro denied Almahdi's Section 440.10 motion. (State Court Decision (Dkt. No. 31-1) at 58-61) On August 5, 2013, Almahdi requested leave to appeal from the Appellate Division, First Department. (Request for Leave to Appeal (Dkt. No. 31-1) at 62-64). On October 2, 2013, the First Department denied Almahdi's request. (Cert. Denying Leave (Dkt. No. 31-1) at 87)

## II.  ALMAHDI'S HABEAS CORPUS PETITION AND JUDGE GORENSTEIN'S REPORT AND RECOMMENDATION

On October 21, 2013, Almahdi filed in the District of New Jersey a petition for a writ of habeas corpus pursuant to 28 U.S.C § 2254. (Pet. (Dkt. No. 1) at 1) Almahdi filed an amended petition on June 11, 2014. (Am. Pet. (Dkt. No. 12)) The amended petition contends that trial counsel provided ineffective assistance of counsel by not (1) "investigat[ing] or perform[ing] certain pretrial functions" and interviewing Almahdi (id. at 7, 11-12); (2) pursuing a double jeopardy claim (Supp. Pleading (Dkt. No. 3) at 10-11); (3) moving to suppress the seized computer (Am. Pet. (Dkt. No. 12) at 11, 22-25); (4) filing a Brady motion to obtain information about Zoe Walmsley, an unindicted co-conspirator and alleged critical prosecution witness (id. at 27-28); and (5) "pursu[ing] [a] colorable IAD defense" (id. at 11). On September

5

22, 2015, Almahdi's petition was transferred to the Southern District of New York. (Order (Dkt. No. 19))

On October 2, 2015, this Court referred Almahdi's petition to Magistrate Judge Gorenstein for an R & R. (Order of Ref. (Dkt. No. 24)) Respondents answered the petition on December 18, 2015. (Resp. Br. (Dkt. No. 30)) On January 4, 2016, Almahdi filed a reply brief. (Pet. Reply Br. (Dkt. No. 32))

On August 23, 2016, Judge Gorenstein issued an order acknowledging that to the extent Almahdi's petition "seeks to raise constitutional claims occurring 'prior to the entry of the guilty plea that did not affect the voluntariness of petitioner's plea[,]' . . . such claims are barred by Tollett v. Henderson, 411 U.S. 258 (1973)." (Order (Dkt. No. 37) at 1 (citations omitted)) Nevertheless, construing Almahdi's pro se filings "'to raise the strongest arguments they suggest,'" Judge Gorenstein interpreted the petition "as claiming that ineffective assistance of counsel rendered his guilty plea 'unintelligent' or 'involuntary'" and requested further briefing "addressing th[is] claim[.]" (Id. at 1-2 (citations omitted)) Both sides subsequently filed supplemental briefs. (See Resp. Supp. Br. (Dkt. No. 39)); Pet. Reply Br. II (Dkt. No. 41))

On March 22, 2017, Judge Gorenstein issued a 24-page R & R recommending that this Court deny Almahdi's petition in its entirety. (R & R (Dkt. No. 44)) Judge Gorenstein concluded that Almahdi had not shown that his attorney's failure to pursue a double jeopardy claim, file a Brady motion, or file a suppression motion was objectively unreasonable. (Id. at 15-19) Judge Gorenstein further found that Almahdi had not demonstrated that his attorney's alleged failure to investigate the case had caused him to suffer prejudice. (Id. at 19-22) Lastly, Judge Gorenstein concluded that no relief is available under 28 U.S.C. § 2254 for substantive violations of the IAD. (Id. at 23) Moreover, to the extent Almahdi contends that his attorney

6

was ineffective for failing to raise a challenge to the IAD procedures, Judge Gorenstein found that he had not raised this claim "in his section 440.10 motion regarding ineffective assistance of counsel." (Id. at 15) Having failed to raise this issue at either the trial level or on appeal, any such claim was procedurally defaulted. (Id. at 23-24)

In the R & R, Judge Gorenstein informs the parties that they have fourteen days from service of the R & R to file any objections, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, and that failure to file objections within the time period will result in waiver of review. (Id. at 24) Almahdi timely filed objections to the R & R on April 7, 2017.[2] (Pet. Obj. (Dkt. No. 45))

## DISCUSSION

### I. STANDARD OF REVIEW

In evaluating a magistrate judge's R & R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit objections to the magistrate judge's R & R. Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).

Where, as here, a party submits timely objections to an R & R, "[the district court] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3). "[O]bjections 'must be specific and clearly aimed at particular findings in the

---

[2] Three days are added to the fourteen-day period where service is by mail. See Fed. R. Civ. P. 6(d).

magistrate judge's proposal'" in order to invoke de novo review. See McDonaugh v. Astrue, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). "[Where] a 'party makes only conclusory or general objections, or simply reiterates the original arguments,' the court reviews the R & R strictly for clear error." Covington v. Five Points Corr. Facility, No. 11 Civ. 8761 (AT) (FM), 2016 WL 3407845, at *1 (S.D.N.Y. June 16, 2016) (quoting Rivera v. Colvin, No. 11 Civ. 7469, 2014 WL 3732317, at *1 (S.D.N.Y. July 28, 2014)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

The objections of parties proceeding pro se "'are generally accorded leniency,'" Milano v. Astrue, No. 05 Civ. 6527 (KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (quoting Dixon v. Ragland, No. 03 Civ. 826 (LTS) (KNF), 2007 WL 4116488, at *1 (S.D.N.Y. Nov. 16, 2007)), and "construe[d] . . . to 'raise the strongest arguments that they suggest.'" Id. (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). However, "even a pro se party's objections to [an R & R] must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." Ackridge v. New Rochelle City Police Dep't, No. 09 Civ. 10396 (CS) (LMS), 2011 WL 5101570, at *1 (S.D.N.Y. Oct. 25, 2011) (internal citations and quotation marks omitted); see also Barratt v. Joie, No. 96 Civ. 0324 (LTS) (THK), 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) ("Objections to [an R & R] 'are to be specific and are to address only those portions of the proposed findings to which the party objects.'" (quoting Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992))).

8

Here, Almahdi's objections lack specificity and do not address Judge Gorenstein's factual findings and legal conclusions. Indeed, Almahdi does no more than repeat arguments presented to and rejected by Judge Gorenstein.³ Accordingly, the R & R will be reviewed for clear error. See DiPilato, 662 F. Supp. 2d at 339-40.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

In considering Almahdi's ineffective assistance of counsel claims, Judge Gorenstein correctly applied the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Almahdi must first establish that his attorney's performance was so deficient that it "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, Almahdi must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at

---

³ For example, Almahdi raises an identical argument concerning the seizure of his computer. Compare Am. Pet. (Dkt. No. 12) at 22-23 (arguing that the computer was seized in violation of the Fourth Amendment because "[a]t the time petitioner['s] vehicle was searched he had already been arrested, handcuffed, secured on the ground and shortly thereafter placed in the back of the officer squad car" and therefore no exception to the warrant requirement applied) with Pet. Obj. (Dkt. No. 45) at 6-7 (arguing that exception to warrant requirement did not apply because "at the time petitioner['s] vehicle was searched he had already been arrested, handcuffed, secured on the ground and shortly thereafter placed in the back of the officer squad car"). Almahdi also repeats his arguments concerning counsel's alleged failure to (1) "conduct a thorough or complete investigation" (compare Pet. Obj. (Dkt. No. 45) at 4, 6 with Am. Pet (Dkt. No. 12) at 7, 10-11) and (2) obtain impeachment information regarding the "state's key witness," Zoe Walmsley, (compare Pet. Obj. (Dkt. No. 45) at 5 (complaining that counsel did not obtain Walmsley's conviction records or information regarding alleged prostitution and heroin use) with Am. Pet. (Dkt. No. 12) at 27-28 (same)). Almahdi likewise repeats his arguments regarding exhaustion of his ineffective assistance of counsel claims, without addressing the factual record or Judge Gorenstein's finding of procedural default. (Compare Pet. Obj. (Dkt. No. 45) at 2 (arguing that the" ineffective assistance of counsel question presented to the district court by petitioner was submitted in a substantially similar fashion to the N.Y. State Supreme Court") with Pet. Reply Br. (Dkt. No. 32) at 4 ("The requirement that, the State court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in State court was the 'substantial equivalent' of that of the habeas claim."). Finally, Almahdi does not address in any fashion Judge Gorenstein's conclusions regarding his attorney's failure to raise a double jeopardy claim. (See Pet. Obj. (Dkt. No. 45))

9

694. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700.

Judge Gorenstein determined that Almahdi's ineffective assistance claims – to the extent premised on his attorney's failure to pursue a double jeopardy claim, move to suppress, and request Brady material – lack merit, because Almahdi has not demonstrated that his attorney's conduct in this regard was "objectively unreasonable." (R & R (Dkt. No. 44) at 15-19) As to Almahdi's failure to investigate claim, Judge Gorenstein found that Almahdi has not demonstrated that he suffered prejudice as a result. (Id. at 19-22) Lastly, Judge Gorenstein concluded that there was no relief under 28 U.S.C. § 2254 for substantive violations of the IAD, and that – to the extent Almahdi was contending that his attorney was ineffective for failing to raise an IAD defense – Almahdi procedurally defaulted on this claim, because he had not exhausted his state remedies. (Id. at 22-24) This Court has reviewed Judge Gorenstein's thorough and well-reasoned R & R and is satisfied that "there is no clear error on the face of the record." Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

### A. Double Jeopardy

Almahdi complains that the events underlying his Dutchess County conviction for criminal facilitation are included as overt acts in the identity theft conspiracy charged in the indictment, and that his trial counsel should have moved to dismiss on double jeopardy grounds. (Supp. Pleading (Dkt. No. 3) at 9-11)

As Judge Gorenstein explains in the R & R (R & R (Dkt. No. 44) at 16), the Double Jeopardy Clause "'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Ohio v. Johnson, 467 U.S. 493,

10

498 (1984) (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)); United States v. Cacace, 796 F.3d 176, 186 n. 6 (2d Cir. 2015) (The Double Jeopardy Clause protects "against successive prosecutions for the same offense" and "'against multiple punishments for the same offense.'" (citations omitted)). It does not, however, bar "subsequent prosecution . . . on charges of conspir[acy,] . . . despite the fact that [the conspiracy charge] [i]s based on the same underlying incidents" that form the basis for conviction for the substantive offense. United States v. Felix, 503 U.S. 378, 389-90 (1992) ("[L]ong antedating any of these cases, and not questioned in any of them, is the rule that a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes. . . . [T]he same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself." (internal quotation marks and citations omitted)). Because there was no legal basis for counsel to make a double jeopardy argument, this Court agrees with Judge Gorenstein's conclusion that counsel acted reasonably in foregoing a challenge to the indictment on double jeopardy grounds. (See R & R (Dkt. No. 44) at 16 (quoting United States v. Regalado, 518 F.3d 143, 149 n. 3 (2d Cir. 2008) ("Failure to make a meritless argument does not amount to ineffective assistance." (alteration, internal quotation marks, and citations omitted))).

### B.  Suppression Motion

Almahdi argues that his trial counsel was constitutionally ineffective in failing to move to suppress the computer recovered during his Dutchess County arrest. (Am. Pet. (Dkt. No. 12) at 22-26)

Judge Gorenstein correctly found that the automobile exception to the warrant requirement authorizes the seizure of Almahdi's computer. (See R & R (Dkt. No. 44) at 17) "Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may

11

conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." U.S. v. Gaskin, 364 F.3d 438, 456-458 (2d Cir. 2004) (holding that search of trunk was permissible under the automobile exception); Michigan v. Thomas, 458 U.S. 259, 261 (1982) ("[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." (citations omitted)). As Judge Gorenstein points out, Justice Carro found that "because 'the crime for which the defendant and Garnett were arrested involved use of the internet, police had ample reason for believing that evidence of the crime, specifically a computer m[ight] be found in the vehicle.'" (R & R (Dkt. No. 44) at 17 (quoting State Record (Dkt. No. 31-1) at 67)) Indeed, police stopped and arrested Almahdi after he had driven Garnett "to a bank branch, where Garnett impersonated victim Karin Bombard and attempted to withdraw money from her Chase Bank account." (Id. at 46 ¶ 6) The automobile exception thus justifies the police search of the car.

Moreover, as Judge Gorenstein notes, police only searched the computer after obtaining a search warrant. (See R & R (Dkt. No. 44) at 17 (citing State Record (Dkt. No. 31-1) at 43-44))

Because Almahdi has not identified any meritorious basis upon which his attorney could have moved to suppress the computer and its contents, he has not demonstrated that his attorney's failure to pursue a suppression motion was objectively unreasonable. See Regalado, 518 F.3d at 149 n. 3. Accordingly, this claim provides no basis for granting habeas relief.

## C. Failure to Obtain Impeachment Evidence

Almahdi complains that counsel should have filed a Brady motion to obtain impeachment information regarding likely prosecution witness Zoe Walmsley. (Am. Pet (Dkt. No. 12) at 27-28) Almahdi contends that Walmsley is "a convicted felon (for the same kind of crimes charged in the case at hand)[,] a convicted long term heroin addict, and a professional prostitute. She also, [sic] would have been the prosecution's key witness." (Id. at 27) According to Almahdi, had "defense counsel interviewed petitioner and investigated the case at hand, a Brady motion could have been filed," and he could have obtained information regarding Walmsley's prior felony convictions, prostitution, and heroin use "that would have been relevant to assessing her credibility and reliability as a witness." (Id. at 27-28)

Under Brady, "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or punishment." United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." Id. (citing Giglio v. United States, 405 U.S. 150, 154 (1972)). The Supreme Court has squarely held, however, that "[t]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant," because "impeachment evidence is special in relation to a trial's fairness, not in respect to whether a plea is voluntary." United States v. Ruiz, 536 U.S. 622, 623 (2002) (emphasis in original). Because impeachment information "ha[s] no bearing on the voluntariness of Almahdi's plea," this Court agrees with Judge Gorenstein that there is no basis to conclude that "counsel acted unreasonably in permitting Almahdi to plead guilty before requesting this information." (See R & R (Dkt. No.

13

44) at 19; Hayes v. Lee, No. 11 Civ. 1365 (KMK) (PED), 2015 WL 5943677, at *30 (S.D.N.Y. Oct. 13, 2015) ("To the extent petitioner claims he is entitled to relief from his guilty plea because he was not advised of the information that allegedly impeached his accusers, the claim is meritless." (alteration omitted) (quoting Tarafa v. Artus, No. 10 Civ. 3870 (AJN) (HBP), 2013 WL 245786, at *2 (S.D.N.Y. Jan. 23, 2013))) To the extent Almahdi's ineffective assistance of counsel argument is predicated on his counsel's failure to file a Brady motion, his claim fails.

### D. Failure to Investigate

Almahdi complains that trial counsel did not interview him and did not properly investigate the case. (Am. Pet. (Dkt. No. 12) at 7, 10-12)

Assuming arguendo that trial counsel provided objectively unreasonable assistance in investigating Almahdi's case, this Court agrees with Judge Gorenstein's conclusion that Almahdi's ineffective assistance of counsel claim fails, because Almahdi has not demonstrated that he suffered prejudice. (See R & R (Dkt. No. 44) at 19-22) As discussed above, Strickland requires a petitioner to demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010); Premo v. Moore, 562 U.S. 115, 129 (2011) ("To prevail on prejudice. . . [petitioner] had to demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" (citations omitted)). "This inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to plea." Matos v. United States, 907 F. Supp. 2d 378, 382 (S.D.N.Y. 2012). "Because

in the usual case the only advantage of going to trial over pleading guilty is the possibility of acquittal or conviction of lesser charges, courts have recognized that a petitioner must provide some basis for concluding that the chance of acquittal or conviction of lesser charges was sufficiently high that the petitioner would have rationally chosen to take the risk of conviction and a longer sentence that accompanies a trial rather than accept the certainty of conviction and a generally lesser sentence that is entailed by a guilty plea." Cuevas v. United States, No. 10 Civ. 5959 (PAE) (GWG), 2012 WL 3525425, at *9 (S.D.N.Y. Aug. 16, 2012) (collecting cases), report and recommendation adopted, 2013 WL 655082 (S.D.N.Y. Feb. 22, 2013).

As Judge Gorenstein notes, "Almahdi's petition and other papers provide no showing of 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" (R & R (Dkt. No. 44) at 20) To the contrary – as Justice Carro notes in his decision denying Almahdi's motion to vacate his conviction – had Almahdi gone to trial and been convicted, "he could have received a term of imprisonment of up to 8 1/3 to 25 years," with consecutive terms for the separate counts. (State Court Decision (Dkt. No. 31-1) at 66) Instead, he received a sentence of 6 to 18 years, with the terms to run concurrently. (See Sentencing Tr. (Dkt. No. 31) at 191) Moreover, the prosecution's opposition to Almahdi's Section 440.10 motion sets forth a detailed description of Almahdi's role and participation in the identity theft conspiracy, indicating that the People's case was supported by substantial evidence:

> [Almahdi] was a leader of a large-scale identity theft and cybercrime ring that operated from at least February of 2009 through February of 2011. He obtained personal identifying information of victims by purchasing that information from collusive bank tellers and by conducting internet searches about the victims. [Almahdi] shared that information with other members of the ring and drove those accomplices to bank branches, where they would impersonate the victims and conduct fraudulent transactions involving the victims' bank accounts. The group stole over $1,000,000 from Chase Bank

15

in this manner. Members of the ring also opened credit card accounts in the victims' names.

(State Record (Dkt. No. 31-1) at 45-46 ¶ 5) Almahdi points to no evidence undermining these allegations. (See Am. Pet. (Dkt. No. 12)) To the contrary, in his plea allocution, Almahdi admitted to stealing more than $1 million from Chase Bank over a two-year period. (See Plea Tr. (Dkt. No. 31) at 183)

Given this record, this Court agrees that Almahdi's ineffective assistance of counsel claim based on trial counsel's failure to adequately investigate his case fails the prejudice prong of the Strickland analysis. See, e.g., United States v. Carraballo, No. S12 98 Crim. 1316 (RWS), 2001 WL 111284, at *6 (S.D.N.Y. Feb. 8, 2001) ("[Petitioner] has presented nothing to suggest either what exculpatory evidence would have been discovered through a more thorough defense investigation, nor that a rational factfinder would have found him not guilty of heroin conspiracy charges in that event. As such, he has not met his burden to show that his attorney's representation was constitutionally ineffective.").

E. **Interstate Agreement on Detainers**

Almahdi also complains that trial counsel should have pursued a defense based on the allegedly deficient IAD process that placed him in state custody. (Am. Pet. (Dkt. No. 12) at 11)

As an initial matter, this Court agrees with Judge Gorenstein that alleged violations of the IAD provide no basis for relief under 28 U.S.C. § 2254. (See R & R (Dkt. No. 44) at 23) "[A] violation of the IAD is not a ground for relief under Section 2254." Reilly v. Warden, FCI Petersburg, 947 F.2d 43, 44 (2d Cir. 1991). Because a violation of the IAD is not "a fundamental defect which inherently results in a complete miscarriage of justice," habeas relief is not available for such a claim. Id.

16

In any event, to the extent Almahdi contends that trial counsel was constitutionally ineffective in failing to raise a defense premised on an IAD violation, this Court likewise agrees with Judge Gorenstein's determination that Almahdi "procedurally defaulted" on this claim. (See R &R (Dkt. No. 44) at 23-24) "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (citations omitted).

A petitioner may satisfy the fair presentation requirement by

"(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (quoting Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982)). "[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claim procedurally defaulted." Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

Although Almahdi raised several ineffective assistance of counsel claims on direct appeal, he never argued – either at the trial level or on appeal – that his counsel provided ineffective assistance in failing to present alleged violations of the IAD. (See CPL 440.10

Motion to Vacate (Dkt. No. 31-1) at 17-44; CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 193-200; Aff. in Supp. of Mot. to Appeal (Dkt. No. 31-1) at 4-6; Mot. in Opp. to Affirmation (Dkt. No. 31-1) at 10-11) Because Almahdi did not present an ineffective assistance of counsel claim premised on deficiencies in the IAD process, the People never had an opportunity to address such a claim (see Affirmation in Resp. to Def.'s CPLR § 7000 Habeas Pet. (Dkt. No. 31) at 206-209; Affirmation in Resp. to Def.'s CPL § 440.10 Motion (Dkt. No. 31-1) at 45-53), and the state courts likewise never had an opportunity to pass upon or address such a claim. (See State Court Decision Denying CPLR § 7000 Pet. (Dkt. No. 31) at 212; State Court Decision Denying CPL § 440.10 Motion (Dkt. No. 31-1) at 58-61) This Court concludes that Almahdi did not "fairly present" his IAD-based ineffective assistance of counsel claim to the state courts.

"New York law provides that a notice of appeal from a conviction must be filed within thirty days of judgment, and that a motion to vacate based on facts visible on the trial record must be dismissed where the defendant unjustifiably failed to raise the issue on direct appeal." Clark v. Perez, 510 F.3d 382, 392 (2d Cir. 2008) (citing N.Y. Crim. Proc. Law §§ 440.10(2)(c), 460). Because (1) Almahdi's ineffective assistance of counsel claim based on his counsel's failure to raise an IAD defense is based on facts available in the trial court record, and (2) Almahdi failed to raise this claim on appeal, "this claim is procedurally barred from consideration in a collateral attack on his conviction." See Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006) (citing N.Y. Crim. Proc. L. § 440.10(2)(c)).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Clark, 510 F.3d at 393. Almahdi "has not attempted to show either cause and prejudice for the default or a fundamental

18

miscarriage of justice," and is therefore "ineligible for habeas relief" on this claim. See Jimenez, 458 F.3d at 149.

## **CONCLUSION**

For the reasons stated above, this Court adopts Magistrate Judge Gorenstein's Report & Recommendation in its entirety, and Almahdi's petition for a writ of habeas corpus is denied. The Clerk of Court is directed to close this case. The Clerk is further directed to mail a copy of this Order to pro se Plaintiff by certified mail.

Because Almahdi has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue under 28 U.S.C. § 2253. This Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a non-frivolous issue).

Dated: New York, New York
      August 24, 2018

SO ORDERED.

*Paul G. Randolph*
Paul G. Gardephe
United States District Judge